IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARRY FERGUSON,

        Plaintiff,

vs.                                     No. CIV 96-568 JC/LFG

DANNY ROSS and JONAH JONES,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

This is a *pro se, in forma pauperis* civil rights action pursuant to 42 U.S.C. §1983. Plaintiff has filed a number of complaints and supplements to complaints, alleging various violations of his civil rights at the Gallup Adult Detention Center ("GADC") in Gallup, New Mexico, while he was awaiting extradition to Florida during a 25-day period in early 1996. He names as defendants Chief of Police Danny Ross, and Jonah Jones, jailer at GADC.

The Court previously dismissed Plaintiff's claims relating to physical conditions at the jail, as well as claims against all defendants other than the two remaining. [Doc. 12]. The Court ordered

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

submission of a Martinez report[2] [Doc. 77]. The parties were given notice that the Martinez report could be used in deciding whether to grant summary judgment of Plaintiff's claims. Defendants submitted their report, Plaintiff responded, and Defendants thereafter submitted a First Supplement to Martinez Report, which included some additional factual information.

Plaintiff's remaining claims include the following: (1) his medical needs were ignored, in that his requests for treatment of a gunshot wound went unheeded; (2) he was denied access to a law library; and (3) he was denied an opportunity for exercise or recreation. The Court has reviewed the file, including the Martinez report and Plaintiff's response, and construed the *pro se* pleadings liberally, holding Plaintiff to a less stringent standard than that required of a party represented by legal counsel. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972); Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir. 1989). This liberal construction, however, does not relieve Plaintiff of his burden of presenting sufficient facts to state a legal claim. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

A constitutional claim brought by a *pro se* plaintiff under Section 1983 should not be dismissed unless the plaintiff could prove no set of facts in support of his claim entitling him to relief. Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989). Pursuant to Rule 56(c), F. R. Civ. P., the Court may grant summary judgment if the pleadings, depositions, answers to interrogatories and admissions or affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The opposing party must be given notice and an opportunity to respond, as provided in Rule 56. Hall v. Bellmon, at 1111.

---

[2] The Court may order defendants in a case brought by a prisoner proceeding *pro se* to submit a special report referred to as a Martinez report. The report is an investigation of the incident which is the basis of the lawsuit. *See*, Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

2

Defendants are in the position of movants for summary judgment. As such, they carry the burden of establishing that there is no genuine issue of material fact, but they may discharge this burden by showing there is an absence of evidence to support the non-movant's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct.2548 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The party opposing the motion may not rest on his pleadings, mere argument or contention, but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof; if he cannot make such a showing, summary judgment is appropriate. <u>Celotex Corp.</u>, 477 U.S. at 324.

### **Denial of Medical Treatment**

Plaintiff was booked into GADC on January 12, 1996 on a Florida fugitive warrant. He was held there until February 7, 1996, when he was released to the custody of TransCor America, Inc. for extradition to Florida. Thus, he spent 25 days at GADC.

During this period, GADC was operated by the City of Gallup through its police department. Plaintiff was considered to be a "county" prisoner at GADC, a category which includes a detainee, such as Plaintiff, being held on a felony warrant from another state. A Jail Operation Agreement between the City of Gallup and the County of McKinley provided that the city would provide housing, food, clothing and administration of County prisoners, but transportation of county prisoners charged with felonies was the responsibility of the county. (Martinez Report, Ex. G). GACD policy is to notify the county sheriff's department upon receiving a request for medical treatment from a county prisoner, so that a transport officer can be dispatched. (Martinez Report, at 2, and Exs. A,

3

F; Plaintiff's Response to Defendants Martinez Report, at 1-2).

Plaintiff alleges that he made several written and oral requests for medical treatment during his stay at GADC but did not receive any type of medical attention. He states that he suffered a gunshot wound approximately 30-60 days prior to arriving at GADC which was "leaking puss [sic] and blood," and that he also had a chronic pain in his stomach accompanied by vomiting, diarrhea, and dizziness. (Complaint, at 5; Motion for Appointment of Counsel [Doc. 2], at 2; Brief in Support of the Plaintiff's Second Motion for Default Judgment [Doc. 52], at 3-4; Response to Defendant's Martinez Report [Doc. 81], at 1-2).

In their Martinez report, Defendants state that Standard Operating Procedure at GADC is that all incoming inmates who are ill or injured are medically evaluated before being admitted, and that Plaintiff received a medical evaluation on January 12, 1996, the day he was booked into GADC. Documentation attached to the Martinez Report indicates that Plaintiff was visually evaluated by a booking officer and was also seen by a physician on the day he arrived at GADC. Although the booking officer noted in the "remarks" section of the booking form that Plaintiff had a gunshot wound to his right inner thigh, the officer noted no "obvious pain or bleeding or other symptoms suggesting need for immediate emergency services," nor "any visible signs of trauma or illness requiring immediate emergency or doctors care." In addition, the Arrest / Booking Report indicates a "Bullet scar R/Inner Thigh,"along with "Acne Scars Face"; there is no indication of an actively infected wound. (Martinez Report, Ex. B). GADC records also state that Plaintiff was seen at "the Hospital" on January 12, 1996, (Martinez Report, Ex. C), that he was taken to the Hospital on January 12, 1996, and that he had a gunshot wound to his right leg. (Martinez Report, Ex. D).

Dr. O. Palomo prescribed ibuprofen for Plaintiff on January 12, 1996, and made the notation

4

that he should use it as prescribed for one week and then switch to Tylenol if necessary. GADC records further indicate that Plaintiff was administered ibuprofen and Tylenol from January 12 to January 18, 1996. (Martinez Report, Ex. D).

There is evidence on the record that on January 23, 24, and 25, Plaintiff complained of pain and infection from his gunshot wound. The record shows that the McKinley County Sheriff's Office was notified on all three of these dates; however, there is no indication that Plaintiff was seen by a doctor nor that he was taken to a hospital in response to these complaints. (Martinez Report, Exs. C, D, E; First Supplement to Martinez Report, Ex. I). There is no record that Plaintiff made any further requests for medical care during the two-week period from January 25 until he was extradited to Florida on February 7.

In Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976), the Supreme Court held that, under certain conditions, denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment. "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983 [citing Estelle v. Gamble] . . . Deliberate indifference may be manifested by intentional denial or delay of access to medical care or intentional interference with treatment." Tanner v. Garner, 978 F.2d 1268 (Table, text in Westlaw), No. 92-6147, 1992 WL 314964, at *1 (10th Cir. Oct. 21, 1992). Plaintiff was being held in GADC as a detainee rather than as a convict, however:

> Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment . . . Thus, Plaintiff's claim for inadequate medical

>attention must be judged against the 'deliberate indifference to serious medical needs' test of Estelle . . .

Barrie v. Grand County, 119 F.3d 862, 868 (10th Cir. 1997).

The "deliberate indifference" standard has two components, one objective and one subjective. Wilson v. Seiter, 502 U.S. 294, 111 S. Ct. 2321 (1991). Plaintiff must make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a culpable state of mind, in that they must have known about the serious medical need and intentionally refused to provide medical care. Grant v. Bernalillo County Detention Center, 173 F.3d 863 (Table, text in Westlaw), No. 98-2193, 1999 WL 157415, at *2 (10th Cir. Mar. 23, 1999), *citing* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

A "serious" medical need is generally seen as one involving a life-threatening situation, or an instance in which it is apparent that delay would exacerbate the prisoner's medical problem, or could result in a lifelong handicap or a permanent loss. A delay in medical treatment does not violate a prisoner's constitutional rights unless he can show that the delay resulted in substantial harm. Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); White v. Colorado, 82 F.3d 364, 366 (10th Cir. 1996); Thompson v. Hamilton, 127 F.3d 1109 (Table, text in Westlaw), No. 97-6084, 1997 WL 639320, at *1 (10th Cir. Oct. 14, 1997) ("Mr. Thompson's claim that he went untreated for 90 days, without a showing of harm, is insufficient").

"Intentional refusal" is more than a negligent diagnosis or an inadvertent failure to provide medical care; rather, Plaintiff must show a "culpable state of mind" to support his claim of denial of a constitutional right. White, at 367; Grant, at *2; Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993).

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 105-06.

Plaintiff has shown neither a serious medical need, nor the requisite culpable state of mind on the part of the Defendants. He has not alleged that any delay in rendering treatment to his wound resulted in substantial harm, nor does the record show that it was apparent to defendants, at any time during his stay at GADC, that delay could result in a lifelong handicap or permanent loss.

The record indicates that Plaintiff was seen by a physician on the day he arrived at GADC, and that the physician recommended ibuprofen and Tylenol, rather than more aggressive measures which would be expected if the wound were infected or deteriorating. If this diagnosis constitutes medical malpractice, it is not actionable under §1983, as noted above. There is some indication on the record that the wound became worse during Plaintiff's 25-day stay at GADC, as the records for January 23-25 note that the wound was infected, and that Defendants called the County Sheriff to transport Plaintiff so that he could be examined by medical personnel. However, after January 25, Plaintiff made no further requests for medical treatment even though he remained at GADC for almost two weeks longer. The record shows that he is not reticent about making his needs known. And there is no indication that anyone questioned his fitness to be transported to Florida on February 7, including Plaintiff himself or the company into whose custody he was released for transport.

In addition, Plaintiff has failed to raise an issue of fact on the subjective element of the

7

"deliberate indifference" test. GADC officials responded to Plaintiff's complaints on January 23-25 by contacting the McKinley County Sheriff's Office to have Plaintiff transported for medical attention. The record is silent as to what occurred thereafter. Plaintiff contends that no one ever came to transport him and that he was never seen by any medical care practitioner on these dates, and the record does not refute that statement.

However, even viewing the facts in a light most favorable to trial on the merits, it is apparent that this issue is immaterial to the case. When the person having custody of a prisoner reports his complaints to the appropriate authorities, a finding of deliberate indifference is conclusively precluded. El'Amin v. Pearce, 750 F.2d 829, 832 n.1 (10th Cir. 1984). Here, Defendants complied with the Jail Operation Agreement by calling the sheriff in response to Plaintiff's complaints of pain and an infection in his wound. Perhaps Defendants could have been more aggressive in placing repeated calls to the sheriff, if in fact the sheriff did not arrive to transport Plaintiff after being notified. But given the lack of evidence that Plaintiff was facing a seriously threatening medical condition, their failure to repeatedly contact the sheriff would amount, at most, to negligence.

In Moore v. Riley, 10 F.3d 810 (Table, text in Westlaw), No. 93-2074, 1993 WL 476434, at *4 (10th Cir. Nov. 19, 1993), the Tenth Circuit affirmed dismissal of an inmate's §1983 action against prison medical personnel, holding that,

> [n]othing about Moore's core allegations states a culpable state of mind on the part of either defendant. At most, Moore is claiming bad judgment. It is well settled that negligence, even gross negligence, does not meet the deliberate indifference standard . . ..

Plaintiff's written complaints during the period January 23-25 assert that he is need of immediate medical attention to his gunshot wound. If Defendants' failure to continue trying to

contact the sheriff's department was based on their assessment that Plaintiff's wound was not serious enough to threaten permanent damage if left untreated, that would constitute at most a difference of opinion with Plaintiff's assessment. This is not sufficient to show the requisite culpable state of mind. In a case involving a gunshot wound sustained by the plaintiff prior to his incarceration, the Tenth Circuit affirmed the district court's grant of summary judgment for the defendants, rejecting the plaintiff's claim that they were deliberately indifferent to his medical needs in that they did not provide surgery for his gunshot wound:

> Mr. Tanner's belief that surgery is required demonstrates only a difference of opinion, not deliberate indifference. Even if a non-prison physician had recommended surgery as medically necessary, this difference in medical opinion would not amount to deliberate indifference.

Tanner, at *2. The same is true in the present case. Under all of the circumstances presented, Plaintiff has shown, at most, negligence, inadvertence, or a difference of opinion. He has not demonstrated lasting harm, nor "the kind of immediate serious medical needs that would suggest a more critical examination of the . . . defendant's motives." El'Amin, at 832. Summary judgment is therefore appropriate on this issue.

## Access to a Law Library

Plaintiff contends that he was denied access to a law library during his stay at GADC. He says he made more than one request for such access and was told by jail officials on each such occasion that there was no way for him to go to the law library. (Response to Defendants Martinez Report, at 2). Defendants assert that GADC does not maintain a law library on the premises, but if a prisoner asks for law library access, GADC personnel notify the McKinley County Sheriff's Department for transport to the county law library. GADC records show no request by Plaintiff for

9

access to the law library, nor any indication that a request was made from GADC to the sheriff for transport.

Prisoners have a constitutional right of access to the courts, and prison officials are under an affirmative obligation to ensure that inmates enjoy access which is "adequate, effective, and meaningful." Bounds v. Smith, 430 U.S. 817, 820, 97 S. Ct. 1491, 1495 (1977). This right is applicable to pretrial detainees, as well as to convicts. Love v. Summit County, 776 F.2d 908 (10th Cir. 1985). However, there is no abstract, free-standing right to a law library or legal assistance. Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996). A prisoner wishing to prevail on a right-of-access claim must show an actual injury, that is, that his claim was impeded in some way, to his detriment, by jail policies or practices. Id.

In the present case, Plaintiff has not shown that any denial of access to the county law library during the 25 days he was incarcerated at GADC has prevented him from bringing this action, or any other action challenging conditions of confinement. The Supreme Court stated in Lewis that inmates do not have a constitutional right of access to legal materials or legal assistance for the purpose of pursuing matters other than actions attacking the inmate's sentence or conditions of confinement; thus, if Plaintiff had other legal matters that required his attention during this 25 days, denial of access to the law library would not give rise to a §1983 action.

The Lewis Court also held that the obligation of custodians to provide access to the courts extends only to the stage where an initial pleading or petition is prepared. The Court rejected any suggestion that "the State must enable prisoners to discover grievances, and to litigate effectively once in court." Lewis, 116 S. Ct. at 2181. The Tenth Circuit has consistently found that the right to assistance stops at the point where a complaint or petition is drafted and ready to be filed. Love

v. Summit County, at 914; Nordgren v. Milliken, 762 F.2d 851, 854-55 (10th Cir. 1985); Carper v. DeLand, 54 F.3d 613, 617 (10th Cir. 1995). Plaintiff in this case was able to draft and file a complaint in this litigation and has shown no signs of being hampered in his ability to file pleadings in connection herewith. Thus far, he has filed 6 complaints or supplements to complaints in this action, and 20 motions for various sorts of relief. Thus, even if Defendants refused Plaintiff's repeated requests for access to a law library, Plaintiff has not shown that he was denied access to the courts.

In addition, although a jail inmate who has been provided neither access to a law library nor the assistance of counsel may well state a claim for violation of his right of access to the courts, Housley v. Dodson, 41 F.3d 597 (10th Cir. 1994), this rule does not apply to very short-term detainees, such as Plaintiff. Beville v. Ednie, 74 F.3d 210 (10th Cir. 1996) (involving an 18-day incarceration).[3] S*ee also*, Love v. Summit County, at 914, where the Tenth Circuit acknowledged the possibility that there may be cases where "brevity of confinement" of jail detainees may not permit sufficient time for access. Plaintiff was incarcerated at GADC for 25 days. He has not shown that his lack of access to a law library during this relatively short period hampered his ability to pursue legal remedies or violated his constitutional right of access to the courts. Summary judgment will therefore be entered on this issue.

## Denial of Exercise

Plaintiff alleges that he was denied any type of recreation while being held at GADC. He says that it was very bad for his health to be locked in a jail cell "for over a month," and he brought this problem to the attention of Defendant Jones and other staff but "never in the whole month and a half

---

[3] Both Housely and Beville, cited in this paragraph, were overruled on other grounds by Lewis v. Casey, as stated in Tucker v. Graves, No. 96-3015, 1997 WL 100884, at *1 n.2 (10th Cir. Mar. 6, 1997).

received any sort of access or recreation." He says that he was in the process of trying to file a written complaint when he was extradited to Florida. (Supplemental Complaint, [Doc. 10], at 5).

Defendants' response is that GADC does have an outdoor exercise area and that the Center's policy is to allow all prisoners two one-hour sessions of outdoor exercise per week. However, GADC does not maintain records of the actual use of the outdoor exercise yard and Defendants cannot give exact dates and times when prisoners were allowed access to the yard. during the period of Plaintiff's detention. (Martinez Report, at 4-5; Ex. A, at ¶¶20-23; Ex. F. "Resident Recreation" standard, A-5.07, at ¶5).

The Tenth Circuit has recognized that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir. 1987). Although the Circuit has not held that prisoners have a constitutional right to exercise, "there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment." Housley, at 599.

The court in Housley, however, did not establish a bright-line test; instead, the court noted that what constitutes adequate exercise depends on the circumstances of each case, one factor being the average length of stay of the inmates. Id. "Where a prisoner has a reasonable opportunity for exercise and does not allege any significant physical deterioration, no constitutional claim is presented." Smith v. Harvey County Jail, 889 F. Supp. 426, 431 (D. Kan. 1995); Steimel v. Fields, No. 92-3274, 1995 WL 530610, at *2 (D. Kan. Aug. 21, 1995). In Smith, a pretrial detainee who was able to exercise in his cell during at least part of his stay in the county jail

> was not subjected to unconstitutional conditions of confinement, as he had an opportunity and sufficient space to perform at least a limited range of physical exercise during his pretrial detention. Although

12

> fresh air and outdoor recreation are universally recognized as desirable for inmates, the court finds the conditions of plaintiff's confinement, viewed in light of the relatively short period of his detention, did not violate the Constitution.

Smith, at 431, *citing* Carver v. Knox County, 753 F. Supp. 1370, 1390 (E.D. Tenn. 1989) (suggesting that opportunity for outdoor exercise is not constitutionally required unless inmates are required to spend more than a year in jail).

The Court is mindful that it does not resolve disputed issues of fact on summary judgment. However, taking into account the relatively short period of Plaintiff's detention, as well as the absence of any evidence, or even an allegation, of significant physical deterioration due to lack of exercise, the Court finds that summary judgment is appropriate on this issue.

## **Recommended Disposition**

That summary judgment be entered in favor of Defendants.

_____
Lorenzo F. Garcia
United States Magistrate Judge